# ·CHARLESTON.

OLIVER TYPEWRITER COMPANY v. HUFFMAN.

Submitted September 11, 1908.    Decided January 26, 1909.·

1.  CONTRACTS—*Construction.*

Where there are contemporaneous writings between the same parties, so far in relation to the same subject matter that they may be deemed part and parcel of the contract, although not referred to in it, they may be read in connection with it.    (p. 56.)

2.  SAME—*Contemporaneous Writing.*

This rule does not admit of evidence of that character for the purpose of changing, modifying or abrogating the contract, but that the whole contract, in all its parts, may be presented, construed and interpreted, and that the intention of the parties may be collected, not from detached parts of the instrument, but from the whole of it.    (p. 56.)

3.  SALES—*Contract—Orders—Construction.*

A contract of agency in writing, for the sale of typewriters stipulated among other things that the agent should remit to his principal in advance the agency prices for each machine ordered by him; a blank form filled out and signed by the agent at the same time and addressed to the principal directed it to ship him two machines, for which he agreed "to pay two hundred and· five·dollars as follows:    Cash, less agent's discount net 30 and 60 days.    F. O. B. Baltimore, *to be shipped when ordered."* The words "to be shipped· when ordered," being written in by the agent in ink.    The order for the machines constituted a part of the agency contract, to be read in connection with it; constituted a mere conditional order for the machines, dependent

for its consummation on the giving of the order for shipment provided for therein, passing no present title to the agent, nor giving any right of action against the agent for the price of the machines, until the order for shipment should be given by him. (p. 57.)

Error to Circuit Court, Mineral County.

Action by the Oliver Typewriter Company against T. T. Huffman. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

A. A. YOUNG and WM. MACDONALD, for plaintiff in error.

FRANK C. REYNOLDS, for defendant in error.

MILLER, JUDGE:

This suit, begun before a justice of Mineral county, was finally tried *de novo* on appeal, in the circuit court of that county, resulting in a judgment for defendant. The object of the suit was to recover $120.00, the price of two Oliver Typewriters, which plaintiff claimed defendant had purchased from it, through one Gray, its agent, by contract in writing, as follows: "Nov. 10th, 1906. The Oliver Typewriter Company, General Offices, Chicago, Baltimore Branch, 14 East Fayette Street. Gentlemen: Please ship to T. T. Huffman, Keyser, W. Va., two Oliver Typewriters, with case bb, etc.,...... No. ..... Cabinet ...... Stand. For which I agree to pay two hundred and five 00-100 dollars, as follows. Cash, less agent's discount net $120.00, 30 and 60 days. F. O. B. Baltimore *to be shipped when ordered.* In case of time payments, the undersigned agrees to execute lease or notes, and chattel mortgage to secure deferred payments. T. T. Huffman. All verbal and written agreements are merged in this order. This order not valid until approved by the Oliver Typewriter Company. Approved: E. H. Gemmill, Manager."

On the day this order was signed, and as a part of the same transaction, the defendant signed an "Agency Arrangement," so called, for the town of Keyser, giving him right to advertise, solicit and sell Oliver Typewriters in said territory, and providing, among other things, that he should remit in advance to the Oliver Typewriter Company, Baltimore, Maryland, the sum of sixty dollars for each regular Oliver Typewriter *ordered by him* under said arrangement; and for other styles and sizes of machines other prices ranging from $65.50 to $75.00 were to be

paid, the remittance or remittances to cover the cost of said machines with office case, properly boxed for shipment. This agreement contained a stipulation as to selling prices, and other stipulations not necessary to mention; also appended to it was an allowance list, containing a list of prices to be allowed for other machines taken as exchange for new machines of plaintiff's manufacture.

. These papers, after being so executed, were forwarded by Gray, the agent, to his company in Baltimore, and on November 13, 1908, defendant received by mail the following letter: "Baltimore, Md., 11-12-06. Mr. T. T. Huffman, Keyser, West Virginia. Dear Sir: We thank you for your request through our Mr. Gray for two machines *on agency basis,* shipment of which will be made immediately on receipt of advice from you direct or through Mr. Gray. *We have approved the agency arrangement* and enclose herewith one copy for your files, along with allowance-list showing prices we will allow for second hand machines f. o. b., Baltimore, when taken in exchange for the Oliver. Kindly acknowledge receipt on stub for that purpose. Wishing you success and hoping to hear from you at an early date, ordering shipment of machines, we are, Very truly yours, The Oliver Typewriter Company. E. H. Gemmill, Manager." The evidence of Huffman shows that after these papers had been prepared by Gray, the agent, noticing that the order for the two machines called for payment in thirty and sixty days, he explained to Gray that such payment was not to be made until after the order for and shipment of the machines, and that Gray allowed him to write in the order the words "to be shipped when ordered."

Nothing transpired after the exchange of these papers until some time in January following; when, as defendant testifies, the express company, in his absence from his place of business, delivered there, express prepaid, two Oliver Typewriters; that returning and finding them there, and not having ordered them, he at once retagged, and re-shipped them to the Company, charges prepaid. The express company at once notified defendant of the refusal of plaintiff to receive the machines; and after a visit paid defendant by Gray, a correspondence followed, resulting finally in the following letter from plaintiff to defendant: "Baltimore, Md., 2-27-07. Mr. T. T. Huffman, Keyser, West Virginia. Dear Sir: In accordance with arrangement made

with you by Mr. Gray, we have instructed the Express Company to return two machines shipped you recently on your order, and we will hold them for a short time for you. We trust you will not be long in getting in shape to receive them. In the meantime, kindly let us have your check for $120.00 to cover, as the bill is long past due. Yours truly, The Oliver Typewriter Company, Manager." The defendant stands on the provisions of his contract of agency, denying any additional obligation or liability to plaintiff on account of the terms imposed by said letter or otherwise.

On March 21, defendant received a letter from plaintiff cancelling his agency, which being lost was not produced. Defendant claims this letter gave him no information as to the cause of his dismissal; the plaintiff that it explained the cause to be the withdrawal of the old model of machine covered by the original contract of agency, and offering him the agency of the new model machine, upon the terms stipulated. Whatever the fact may be, it is immaterial. However, it appears that sometime in April or May following its cancellation of the agency, the plaintiff company, without orders from him shipped defendant two machines, which he refused to accept. Whether these were the machines originally shipped defendant, and what became of them, does not clearly appear. In one place in his evidence defendant says the date of the last shipment was "about April 25th." In about the same connection he refers to a postal card, offered in evidence, but not found in the record, dated May 21, "asking them not to ship them." As plaintiff has not attempted to prove the last shipment, or that the defendant actually got the machines, or what became of them, we conclude, as did the jury and the court below no doubt, that defendant never received or accepted the machines.

On the trial plaintiff rested its case on said order of November 10, 1906, and a letter from defendant of February 12, 1907, as follows: "Oliver Typewriter Company, Baltimore, Md., Gentlemen: I have this day received notice from the Express Company that you have refused to accept the two machines returned to you. I fully explained to your agent why I could not use these machines at the present time and that the machines *was* not to be shipped until ordered. Your agent also promised to be in Keyser during the month of February at which time I was

to give him the date of shipment. Now if this is your way of doing business you can not expect to sell any more machines to me, and further will say that you can suit yourself as to whether or not you will *except* the machines returned to you. I have bought and sold typewriters for the past five years and have always fulfilled my part of every contract and now if you think you can push machines on me before I am ready for same you will find that I can easily dispose of them at a much lower price than they cost me. Now if these machines are not received by you I will order same returned and will pay for same promptly as per agreement, but you can expect to see these machines advertised for sale at $50.00 or less. You might be able to force machines on people that *has* never handled typewriters but you will find it different in this case, you will find that I can lose as many dollars as you can sales of machines. And being interested in the paper published here you will find that all space necessary for the advertisement of same will be used. Had you received the machines as you should have done you would have received more orders from me in the near future as it is you can look for nothing. If I receive no answer from you before the 15th these machines will be ordered returned and I will send you with my compliments a paper containing my Oliver add. Yours truly, T. T. Huffman." On cross-examination of defendant, however, it introduced in connection with his testimony, its reply to that letter of February 27, 1907, already recited.

On writ of error to this Court, the plaintiff now insists, that the defendant's order of November 10, 1906, for the two machines, constituted an unconditional contract of sale and purchase thereof, unambiguous in terms, and rightfully construed, rendering defendant liable, sixty days from the date thereof, to pay plaintiff the sum of $120.00; that although the contract of agency was entered into on the same day, co-temporaneously with the giving of said order, and were both accepted at one and the same time by plaintiff's letter of November 12, 1906, the agency contract constituted no part of the contract for the two machines, and that neither it, nor said letter, nor any oral testimony of the defendant or of other witnesses, objected to, was properly admitted, to explain, modify, or change the effect of said order; and that the court below erred in ad-

mitting all such evidence, and in giving and refusing instructions based thereon.

If plaintiff's premises be correct its conclusions of course would follow, but we do not think its premises well founded in law or fact. It is a general rule of law that "if there are contemporaneous writings between the same parties, so far in relation to the same subject matter that they may be deemed part and parcel of the contract, although not referred to in it, they may be read in connection with it." 2 Par. on Cont. (9th Ed.) bottom p. 706; 9 Cyc. 580. This rule has been applied by this Court, and in Virginia to contemporaneous deeds. *George, Ex'r.* v. *Cooper,* 15 W. Va. 666; *Anderson* v. *Harvey's Heirs,* 10 Grat. 386. And in Virginia to a power of attorney and a deed executed at the same time. *French* v. *Townes,* 10 Grat. 513. And in Virginia to two deeds executed at different times, though the latter abrogated the former, to aid in ascertaining what was the intention of the parties, or what property was conveyed by the latter. *Preston & Massie* v. *Heiskell's Trustee,* 32 Grat. 48-57. This rule does not admit evidence for the purpose of changing, modifying or abrogating the contract, but that the whole contract, in all its parts, may be presented, construed and interpreted together, for in construing a contract the intention is to be collected, not from detached parts of the instrument, but from the whole of it. 9 Cyc. 579.

With respect to the oral evidence admitted, we see nothing in it tending to contradict or vary the terms of the contract. Some of it may have been incompetent, irrelevant, or immaterial, but we think its admission, so far as it may have been technical error, was harmless error, the purposes and intention of the parties substantially appearing from the face of the papers themselves.

The question then recurs, Is the agency contract so far a part of the order for the machines that it and the letter of acknowledgment, one or both, should be considered as parts of one and the same contract and construed together? We think there can be no question that they should be so treated. We are also of opinion that the oral evidence of defendant that he was engaged in the business of selling typewriter machines; that he then had on hand a large number of other machines, and little demand for them, as he stated to Gray, plaintiff's agent, all go

to explain the character of the order for the two machines involved here, and why the clause "to be shipped when ordered," was so inserted in said order. Besides, defendant's letter of February 12, 1907, offered in evidence by plaintiff, fully explains this situation, covering practically everything contained in his oral evidence. Moreover, we find, the order itself stipulates that the price to be paid therefor was "cash *less agent's discount* net $120.00." Why "less agent's discount" unless an agency was created by the co-temporaneous papers? As we understand the evidence the making of the agency arrangement actually took place in point of time, before the giving of the order. The agency arrangement, it is true, provided for payment in advance for all machines ordered, and this is one of the grounds of objection to treating the order as part of it; but when considered in the light of the facts and circumstances surrounding the parties we see nothing substantial in the point of objection. The stipulation for payments in the agency contract plainly relates to machines to be thereafter ordered; while those called for in the order given were for beginning the work of the agency and were to be paid for, as defendant claims, in 30 and 60 days from the date of shipment, but as plaintiff claims from the date of said order. Defendant says that his only purpose in giving the order in this form was that he might have special terms of payment on the first two machines to be ordered when he should have need for them in the business of his agency; and we think the contract, properly interpreted shows this to have been the plain intention of the parties. This view in no way does violence to the terms of the contract. It contemplated that defendant might never give shipping orders for any machines; that death, changes in business, and the conditions of business might never require it, or render it prudent or proper to do so. The order at most amounted to a conditional sale, depending for its confirmation and execution on whether or not the defendant should ever give an order for shipment. It was for him to say when, if ever, the machines should be shipped. The contract remained executory notwithstanding the enforced delivery attempted, and plaintiff could not, by its letter of February 12, 1907, change or modify the original contract. Defendant's letter of February 30, 1907, waived no right. In it he interpreted the contract the same as now. True he threatened that if the machines were not accepted

by plaintiff, he would order them returned, and would advertise and sell them for less than cost, below list prices, to the detriment of the plaintiff's business, as he supposed, not a very manly course to pursue it is true, but resulting in the machines being accepted by plaintiff; and before they were re-shipped to defendant in April or May his agency had been cancelled.

If, however, we should construe the order for the machines as an absolute and unconditional sale and purchase thereof, the contract still remaining executory, what are the legal rights of the parties? We have recently held that "neither an action for goods bargained and sold, nor for goods sold and delivered will lie, if the title to the property has not passed to the vendee," and that "if an executory contract of sale has been broken by the vendee before title has passed, the measure of damages, in an action by the vendor, is the difference between the contract price and the value of the property." *Acme Food Co.* v. *Older,* 61 S. E. Rep. 235. The case at bar, even under the liberal rules of practice in justices' courts, could not be treated as a suit for damages as for breach of the contract; it was not brought on any such theory, and no evidence was offered to support a claim of that character.

On the subject of the instructions little need be said. Defendant's instruction number four, refused, proposed to tell the jury "that under the law it is the duty of a person dealing with an agent to know the extent of the agent's authority with whom he is dealing." Speaking generally, this is a correct proposition of law; but what possible application could it have to the case in hand? No question of authority was involved. The authority of the agent to negotiate the contract was not only admitted, but the contract, as made and interpreted, was approved. The instruction was no doubt intended to cover the false assumption that the agency arrangement, and the oral evidence admitted operated to change or vary the contract for the machines; but as we have seen, this was an erroneous theory, and the instruction was inapplicable to the case, and properly refused.

Defendant's instruction number one, objected to, but given, was as follows: "The court instructs the jury that if they believe from the evidence that the defendant T. T. Huffman, was the agent of the Oliver Typewriter Company, at the time the con-

tract in question was signed, and that the two typewriters in question were not to be received by him until ordered by him to be shipped on the agency basis, and that he never ordered said typewriters to be shipped they shall find for the defendant." As we have interpreted the contract and as applied to the case on trial, we think this instruction was proper.

Perceiving no error we affirm the judgment below.

*Affirmed.*