U. S. RUBBER RECLAIMING COMPANY, INC. *v.* SEWARD WIRE COMPANY.

(No. 7176)

Submitted February 16, 1932. Decided March 1, 1932.

*B. M. Ambler, Jas. S. McCluer, Mason G. Ambler,* and *Fred L. Davis,* for plaintiff in eror.

*Russell, Hiteshew, Adams & Hill,* and *Milton Dammann,* for defendant in error.

MAXWELL, JUDGE:

On this writ of error, Seward Wire Company complains of a judgment against it on directed verdict for $7,500.00 in favor of U. S. Rubber Reclaiming Company. The action is for damages for alleged breach of contract.

On the 16th day of February, 1925, the defendant purchased 500,000 pounds of reclaimed rubber of the plaintiff at $8\frac{1}{4}$c per pound, requisition to be made by the purchaser for deliveries from time to time, the whole quantity to be delivered within a year. Shipments were made under the contract but many complaints were made by the defendant because of delay, irregularity and shortage in shipments, and of deficiency of quality of material. On the 17th of September, 1925, a representative of the plaintiff visited the place of business of the defendant at the city of Parkersburg and at that time there was entered into a second contract between the parties. Under it the defendant purchased of the plaintiff 200,000 pounds more of the same quality and brand of rubber

at the price of 10¼c per pound. The entire amount of this purchase was to be delivered within one year from the date of the contract on requisitions of the purchaser.

No requisitions were ever made for shipment of rubber under the second contract, and none was shipped. Under the first contract all of the rubber provided for by it was shipped to the purchaser on its requisition, except about 32,000 pounds which was never requisitioned. The last shipment under the first contract was in June, 1926. Of the said shipment 9,000 pounds was rejected. The fact that the one-year term of the first contract had expired seems to have been ignored by the parties. Following the said last shipment there not only was no requisition by the defendant for more of the reclaimed rubber but numerous samples of other grades of rubber at different prices were submitted by the plaintiff to the defendant. The record does not disclose that there was any demand by plaintiff of defendant that requisition be made for the remaining 32,000 pounds of the first contract, until December 27, 1928, when the Rubber Company wrote the Wire Company calling attention to the fact that about 32,000 pounds remained unrequisitioned under the first contract and that none had been requisitioned under the second contract, and advised the Wire Company that unless requisitions were forthcoming for this material, the Rubber Company would consider that the Wire Company had repudiated the contracts, and that suit would be instituted. The Wire Company replied, justifying its previous course of action, but did not requisition any more rubber. Although the action is predicated on alleged breach of both of the contracts, the plaintiff, at the trial, waived any rights that it might have under the first contract, and placed its reliance entirely upon the alleged breach of the second contract. The market price of this quality of rubber in December, 1928, was 6½c per pound. The difference between this price and the price of 10¼c fixed in the second contract is 3¾c per pound. Applying this difference to the 200,000 pounds contemplated by the second contract, the amount of plaintiff's recovery was determined.

When the second contract was entered into at Parkersburg the representative of the plaintiff who negotiated the transaction made an immediate report thereof to the office of the company in New York by telephone. Immediately a written contract was prepared by the plaintiff in its home office and mailed to the defendant. In the letter accompanying the written contract which was sent to the defendant for signature there was reference to the new purchase as "an order for 100 tons of Buffalo XX, to be taken after the completion of your present contract, * * *." At the trial, serious question arose as to whether this letter, offered by the defendant, should be admitted in evidence. And, although the letter was admitted, full significance seems not to have been accorded it. The letter and the contract of even date should be read together. "Where there are contemporaneous writings between the same parties, so far in relation to the same subject matter that they may be deemed part and parcel of the contract, although not referred to in it, they may be read in conection with it." *Typewriter Co.* v. *Huffman,* 65 W. Va. 51, 63 S. E. 1086. Giving the letter the significance to which it is entitled, the fact becomes evident that the parties entered into the second contract with the idea that the rubber provided for therein was to be requisitioned and delivered subsequent to the completion of the first contract. The price in the first contract being $8\frac{1}{4}$c, and in the second $10\frac{1}{4}$c, it would be unreasonable to expect that the defendant would requisition at the higher price material to which it was entitled at the lower.

The first contract was not completed. If it was the fault of either party, whose? If the defendant's, it is not entitled to shield itself behind the September arrangement that the 200,000 pounds of rubber then purchased should not be requisitioned or shipped until after the completion of the first contract. And if it was the Rubber Company's fault that the earlier contract was not completed, if it so conducted itself with reference to both the time of shipment and the quality of the material shipped that the defendant was warranted in not making requisition for the final 32,000 pounds the plaintiff cannot be heard to say that the time for shipment of rubber under the second contract ever arrived. But we are

met by the settled rule of law that "when a buyer has knowingly accepted defective installments on a contract, he cannot rescind the contract because of the inferior quality of those installments." *Coal Co.* v. *Paper Co.*, 103 W. Va. 637, 138 S. E. 755, 756.

The query arises, however, as to whether there can be applied here, as in contracts for services, the rule that a perverse line of conduct may give rise to a situation wherein the aggrieved party, though not rescinding the contract, may merely accept the situation which the wrongdoing of the other has brought about? *Anvil Mining Co.* v. *Humble*, 153 U. S. 540, 38 L. Ed. 814. On reason, it would seem that the query should be answered in the affirmative unless the buyer is precluded by his acceptance of former shipments. Though the wronged party may not rescind because of delay in shipment or of inferior quality of installments which he had accepted, is he not entitled to have his said acceptance considered as having been made upon the implied condition that thereafter installments would be delivered in compliance with the contract? Because stress of circumstances has made it necessary for him to accept belated and unsatisfactory shipments, under protest, must such acceptance in all events stand as his poniard of impalement? It would seem that these circumstances, at the very least, afford a basis or background from which to view the conduct of the parties.

The above query, however, becomes of secondary importance in the light of the more serious question of whether the conduct of the parties subsequent to the last consignment in June, 1926, operated as a practical abandonment of the contract by both parties. If so, the plaintiff cannot recover. This question should have gone to the jury.

If the contracts were not mutually abandoned and the defendant breached them, the damage should be determined as of the time of the breach and not as of a subsequent date.

Thus reaching the conclusion that the issues of fact presented on the record were proper for jury determination, it follows that we must reverse the action of the trial court in directing a verdict for the plaintiff, and remand the case for a new trial.

Much of the printed record is made up of argument of counsel on questions of admission of evidence. Ordinarily, the carrying of arguments into the record should be avoided, if for no other reason, because of the unnecessary expense thereby imposed upon litigants.

*Reversed and Remanded.*