MINEAR COAL CO. *et al. v.* MILLER-TODD COAL CO.

(No. 9500)

Submitted September 8, 1943. Decided October 19, 1943.

152

*Myron B. Hymes* and *Haymond Maxwell,* for appellant.

*C. O. Strieby* and *E. A. Bowers,* for appellees.

KENNA, JUDGE:

From a decree of the Circuit Court of Upshur County, requiring the defendant, Miller-Todd Coal Company, to specifically perform an alleged contract to convey to the plaintiff, Minear Coal Company, defendant was granted this appeal. The six assignments of error are comprehended in but two main points, the first being that the alleged contract to convey, compliance with which was ordered by the trial court's decree, constituted a separate and distinct voluntary instrument not a part of an admittedly binding contract dated February 6, 1936, and therefore was not shown to be supported by a valuable consideration and hence is not enforceable, and, second, that in so far as the terms of that contract obligated the defendant to convey to the plaintiff, that obligation rested upon either a future contingency or a condition precedent, the terms of which were entirely too vague, indefinite, and inconclusive to be specifically enforceable. There is no assignment of error based upon the refusal of the trial chancellor to grant the relief prayed for by the defendant in its answer in the nature of a cross-bill.

The circumstances giving rise to this controversy as disclosed by the bill of complaint, the cross-bill and answer,

replication and the proof taken upon the issues so formed, are as follows:

On February 6, 1936, Hymes and Young, Special Commissioners, pursuant to a decree entered in the Circuit Court of Upshur County, in a proceeding then pending sold at public auction all of the property of the defendant, Minear Coal Mining Company, with the result that C. O. Strieby became the highest bidder, followed by the entry of an upset bid by Miller-Todd Coal Company, to whom the sale was confirmed by decree later entered.

On the same day, February 6, 1936, C. O. Strieby, who had originally been declared the highest bidder, entered into an understanding with Miller-Todd Coal Company, the purchaser, by which he, Strieby, agreed to purchase for the sum of seventy-one hundred fifty dollars, and Miller-Todd Coal Company agreed to sell and convey, naming no time of performance, all of the property it had purchased at the judicial sale, reserving, however, a right-of-way through the coal, and the entire surface, with certain exceptions, and all of the mineral rights, excepting coal, oil and gas. Miller-Todd Coal Company was, upon the happening of a certain contingency, to convey without further charge the property reserved, not including the right-of-way. It will be observed in passing that this agreement was entered into between persons who had that day been competitive bidders at a judicial sale, and consequently that if it had been challenged, it would have been subjected to careful scrutiny, but that question, not being raised, is not considered nor indirectly passed upon.

After the judicial sale was closed, representatives of the contracting parties, Miller-Todd Coal Company and C. O. Strieby, Trustee, met for the purpose of undertaking to agree upon the terms of a recordable contract. Apparently they reached a substantial agreement, which was reduced to a single writing. Among other things, the seller, Miller-Todd Coal Company, agreed to convey to the buyer, C. O. Strieby, or his assignees, the property

that it reserved by the terms of the contract of sale, without cost to the buyer, when Miller-Todd "shall have acquired title to a certain boundary of coal now in contemplation of the parties." This provision was in the single agreement as first drafted. The first draft of the contract was not executed by the contracting parties, due to the fact that Miller-Todd did not wish to have recorded its undertaking to convey additional property to the buyer in the event a "certain boundary" of coal should be acquired by it, because it feared that making such information available to the public would seriously hamper its contemplated negotiations. Therefore, the parties agreed that while that part of the contract of sale which Miller-Todd could then comply with, and whose terms were not governed by a future event, should be embraced in one instrument, the transfer of additional property without additional consideration upon the occurrence of a contingency or condition precedent, should be embraced in a separate and unrecorded writing. This was done and two separate papers were executed on February 6, 1936, the first agreeing to convey all of the property Miller-Todd had bought at the judicial sale, not including a right-of-way through the coal, the surface and the minerals, with the exception of coal, oil and gas, which, because excepted from the exceptions, was included in the sale. The second paper covered the agreement to convey the additional property.

After these three instruments (the unexecuted first draft and the subsequent two drafts that simply divided the same understanding) had been drawn, the one containing the entire contract not having been executed, and the two severing its provisions having been put into effect, the next occurrence of consequence shown by this record is a deed dated November 27, 1937, referred to without objection, but not introduced in evidence, by which Miller-Todd conveyed to Minear Coal Company, Strieby's assignee, all of the property it had purchased subject to the reservation of the right-of-way, surface and minerals, ex-

cepting coal, oil and gas, described in the principal contract.

In the late summer of 1940 the Miller-Todd Coal Company purchased one hundred eleven acres of coal adjacent to the tract which they were operating in 1936, having conducted the negotiations with the seller on the basis of one hundred acres at one hundred fifty dollars an acre, and paid fifteen thousand dollars cash, with an additional eleven and a fraction acres added to round out the boundary involved. The Buckhannon River Coal Company was the seller, and some of its officials and representatives testified for the purpose of throwing what light they could upon the controverted question of whether the tract acquired by Miller-Todd from them in 1940 could be said to be the tract "in contemplation of the parties" at the time Miller-Todd and executed its contract of sale to C. O. Strieby. In addition to the representatives of Buckhannon River Coal Company certain of the officers of Miller-Todd Coal Company, who occupied the same positions in the year 1936, also testified. It is to be noted that these witnesses for the defendant, although they stated emphatically that the land purchased from Buckhannon River Coal Company was *not* the coal in the contemplation of the parties to the supplemental agreement in 1936, all failed to say what boundary of coal *was* in the contemplation of the parties and what *was* meant by "a certain boundary of coal now in contemplation of the parties." The boundary of coal conveyed to Miller-Todd by Buckhannon River Coal Company was the first and only boundary of coal, according to the record showing here, to which Miller-Todd acquired title after the execution of the supplemental agreement. It is not shown that it tried to acquire other boundaries of coal from other sellers, although there is testimony to the effect that it did undertake to negotiate with Buckhannon River Coal Company for additional acreage as a part of the boundary purchased. However, a set amount of fifteen thousand dollars seems to have been the limit of its expenditures, and

therefore the question was not for how much it could acquire a "certain boundary", but the size of the boundary that could be acquired for a certain price.

So, on the face of the printed record, although the testimony of the plaintiffs to the effect that what was acquired by Miller-Todd is the same coal that it had in contemplation before the supplemental agreement was executed is quite weak, there being but on witness, who, in a rather questionable manner, makes the positive statement that it was, that company offers no proof of what it did have in contemplation nor of its reasons for not purchasing that boundary. Certainly it cannot be said that it was the purpose of the supplemental agreement to leave the determination of the exact boundary contemplated to future decision. Miller-Todd knew when the supplemental agreement was executed and knew when its officers testified, the boundary that was the subject of that paper. It was not chosen to do more than deny the plaintiff's testimony to the effect that the one hundred eleven acres was the boundary dealt with in the supplemental agreement. It is quite apparent that more convincing evidence was in its possession, if its position was correct. Since negative testimony is usually treated as not having the probative value of that which is positive and since Miller-Todd seems not to have made a full disclosure, we are of the opinion that the trial chancellor's decree should not be disturbed as against the clear weight of the evidence.

The contention that the supplemental agreement of February 6, 1936, describing the circumstances under which the conveyance of additional property would be made from Miller-Todd to Strieby, Trustee, or his assigns, is not a part of the principal contract and is, therefore, not based upon a valuable consideration but is simply an unenforceable, ineffectual use of words on the part of the signers, we think lacks merit. We do not believe it can be seriously contended that the recorded contract and the supplemental paper are separate and distinct "en-

tities". To our minds there is no question but that, as between the contracting parties, it is not necessary that a written agreement constituting a single contract shall be encompassed in one instrument. We think that it can be comprised of two, and perhaps more, and yet be enforceable as a whole, provided that the relationship between the several papers is clearly established. Here we think there can be no doubt as to the mutual effort between Miller-Todd Coal Company and C. O. Strieby, Trustee, to reduce their understanding to two written instruments. Strieby paid and agreed to pay Miller-Todd Coal Company the sum of seventy-one hundred fifty dollars in exchange for the entire understanding so represented—that contained in the main instrument combined with that contained in the supplemental agreement. To our minds it is perfectly clear that this negotiation resulted in one understanding and one consideration, although it was represented by two written instruments both executed by the same parties at the same time.

It is contended that the supplemental agreement is too indefinitely worded to sustain a decree for specific performance. There is no uncertainty contained in the description of the property to be conveyed. That is described as follows in the supplemental agreement: "* * * the surface and all mineral rights reserved in the contract of February 6th, 1936, above referred to, * * *". The only possible uncertainty lies in the naming of the contingency controlling performance by Miller-Todd and that was permitted to rest largely upon its conscience. It was in possession of full information, and that being so we do not believe it was necessary for the supplemental agreement to more fully describe the circumstances under which Miller-Todd would be required to convey. We are of the opinion that the naming of the contingency is similar to the recital of a consideration and that it may be established by proof extraneous the instrument.

There does, however, appear to be an inadvertence in the drafting of the final decree that should be corrected

before it is executed. The decree refers to the surface and mineral rights reserved in the supplemental agreement dated February 6, 1936, obviously meaning the recorded contract dated the same day. The trial chancellor's decree will be corrected in this respect, and as so corrected, will be affirmed.

*Affirmed.*