**NATIONWIDE BOWLING CORPORA-TION, a corporation, Plaintiff,**

v.

**BRUNSWICK CORPORATION, a corporation, Defendant.**

**Civ. A. No. 3128.**

United States District Court
S. D. West Virginia,
Charleston Division.

March 1, 1968.

Russell C. Dunbar and Edward V. Lee, Huntington, W. Va., for plaintiff.

Robert S. Spilman, Jr., Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., for defnedant.

## MEMORANDUM OPINION

FIELD, Chief Judge.

Nationwide instituted this action against the defendant, Brunswick, to recover the sum of $15,000 which had been deposited by Nationwide incident to a transaction for the purchase by Nationwide of certain bowling equipment from Brunswick. In its answer Brunswick alleged that plaintiff had breached the purchase agreement and denied that it was under any duty to return the amount of the deposit. Brunswick also set up a counterclaim for the residue of the purchase price.

Brunswick has now filed a motion for summary judgment on the ground that it is entitled to a judgment of dismissal as a matter of law. The affidavit of Brunswick's attorney together with copies of certain agreements and correspondence were filed in support of the motion. No responsive affidavit or other material has been filed by plaintiff, and since it appears that there is no genuine issue as to any material fact, summary disposition under Rule 56 F.R.C.P. is appropriate.

The controversy had its genesis in two identical printed documents each dated September 6, 1963, and entitled "Construction and Equipment Contract." One of the "contracts" covered the purchase of automatic pinsetters for a stated price of $245,472 upon which an initial payment of $12,000 was made by Nationwide; the other covered the purchase of certain bowling alley equipment for a stated price of $90,120 upon which a downpayment of $3,000 was made by Na-

tionwide. Each of these documents was signed by Nationwide (described as "Proprietor" therein) and sent to Brunswick together with the initial payments aggregating the $15,000 here in dispute.

These forms signed by Nationwide had been prepared by Brunswick and, among other provisions, contained the following:

"18. * * * Brunswick agrees that neither the acceptance of any down payment nor the depositing of Proprietor's check by Brunswick shall be construed as acceptance of this contract by Brunswick. The Contract or any amendment thereof shall not be binding upon Brunswick until it has been accepted in writing by a duly authorized officer of Brunswick at its office in Chicago, Illinois.

"19. This Contract constitutes an offer, by Proprietor to Brunswick on the terms set forth herein and shall remain irrevocable for a period of 45 days from the date of delivery of this Contract to Brunswick."

No contention is made by Brunswick that these "contracts" were specifically "accepted in writing by a duly authorized officer of Brunswick at its office in Chicago, Illinois." However, an "agreement" dated September 16, 1963, was executed by Nationwide and Brunswick which contained the following recital:

"WHEREAS, the parties hereto have heretofore entered into a Construction and Equipment Contract for the purchase by Nationwide of twenty-four (24) Brunswick bowling lanes and Twenty-four (24) Brunswick Automatic Pinsetters to be installed by Brunswick at Robin Lanes, U.S. 61—6545 McCorkle S. E., Kanawha City, West Virginia, * * * "

The agreement stated that time was of the essence, and provided that Nationwide should notify Brunswick by certified mail of the date of readiness of the premises for installation of the equipment. Brunswick agreed that if installation was not completed within six weeks from the receipt of such notification, it would pay to Nationwide $100 per day as

liquidated damages until such time as the installation of the equipment was completed.

Nationwide never gave Brunswick notification of readiness. Instead on November 8, 1963, and prior to the delivery of any of the material covered by the two contracts, Nationwide sent a telegram to Brunswick which read:

> "ATTN MR. BROWN. IN VIEW OF OUR FINANCIAL CONDITION AS DISCUSSED WITH YOU, REQUEST YOU STOP SHIPMENT OF EQUIPMENT TO COMPANY."

Brunswick shipped a substantial amount of equipment to Nationwide on November 11, 1963, and on November 18, 1963, Nationwide wrote Brunswick stating " * * * we are exercising the privilege granted under Article 19 of said agreement of cancellation and do hereby cancel said agreement." The letter also demanded the return of the $15,000 " * * * which we placed with you in evidence of good faith on our part * * *." Brunswick refused this demand and this litigation followed.

The first issue presented by this motion is whether at the time plaintiff sent its notice of cancellation a contract for purchase and sale existed between the parties. Nationwide contends that since Brunswick had failed to accept the September 6, 1963, contracts in the manner specified in paragraph 18 thereof, Nationwide had a right to cancel or withdraw its offer under the provisions of paragraph 19. This argument, however, would elide the impact of the Agreement of September 16, 1963, upon the rights and obligations of both Nationwide and Brunswick.

■ This Agreement is a clear acknowledgment by Brunswick of the earlier purchase contracts, and an equally clear acceptance thereof by Brunswick. Not only did the defendant accept its obligation as seller, but it recognized that time was of the essence, and subjected itself to a per diem penalty in the event of any delay on its part in carrying out its obligations thereunder.

■ The Agreement of September 16th recognized the existence of the prior purchase contracts and by plain implication incorporated them by reference therein. The fact that the agreement of the parties was contained in three instruments instead of one does not affect the validity of the contract nor the rights of the parties thereunder. This principle was recognized in the case of Minear Coal Co. v. Miller-Todd Coal Co., 126 W.Va. 151, 27 S.E.2d 428 (1943), where the Court stated as follows, at page 157, 27 S.E.2d at page 430:

> "To our minds there is no question but that, as between the contracting parties, it is not necessary that a written agreement constituting a single contract shall be encompassed in one instrument. We think that it can be comprised of two, and perhaps more, and yet be enforceable as a whole, provided that the relationship between the several papers is clearly established."

Assuredly, the relationship between the three instruments in the present case is clearly established, and they delineate a valid and binding agreement of purchase and sale between the parties. Accordingly, it follows that the "cancellation" by Nationwide, and its refusal to accept delivery constituted a breach of that agreement.

■ The remaining question is whether under these circumstances Brunswick is entitled to retain the amount of the initial deposits made by the defaulting purchaser, Nationwide. The general principle of law that a seller who is not in default under an executory contract may retain money deposited with him by a buyer who, without cause, breaches his contract with the seller was recognized and applied in the West Virginia case of Stewart v. Elkins, 101 W.Va. 557, 133 S.E. 125 (1926). In that case Judge Hatcher stated, at page 559, 133 S.E. at page 126:

> " * * * Consequently the sole question presented here is, Can a purchaser in default under an executory contract recover at law his payments thereon,

his vendor not being in default? There seems to be no division of authorities in denying such recovery. The law is settled, that when a vendor is without fault, and the vendee with no substantial cause has refused or is unable to perform his part of an executory contract, the vendee is not allowed to recover what he has paid and his action for that purpose will not be entertained. 29 A & E.Ency.Law, 729; 27 R.C.L., 624; 39 Cyc., 2025(b); 2 Minor Inst. (2nd Ed.), 781. 'It may be asserted, with confidence, that a party who has advanced money, or done an act in part performance of an agreement, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations, according to the contract, has never been suffered to recover for what has been thus advanced, or done. * * * It would be an alarming doctrine, to hold, that the plaintiffs might violate the contract, and because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it would have the same right to recover it back that the plaintiffs have. The defendant's subsequent sale of the land does not alter the case. * * * The plaintiffs cannot, by their own wrongful act, impose upon the defendant the necessity of retaining property which his exigencies may require him to sell; this would be most unreasonable and unjust, and is not sanctioned by any principle of law.' * * * "

■■■ While the Stewart case involved a real estate transaction, there is no indication that the Court intended to confine the application of the principle only to contracts involving the sale of real estate. No West Virginia case on this question involving the sale of personalty has been found, but cases in other jurisdictions indicate quite clearly that the principle applies to contracts for the sale of personalty as well as real property. See Kaufmann v. Baldridge, 162 F.2d 793 (10th Cir. 1947); In re Oscar Nebel Co., 117 F.2d 326 (3rd Cir. 1941). While the latter case involved a specific contractual provision for liquidated damages, in his opinion Judge Goodrich recognized the applicability of this general rule of law to contracts involving personal property. In passing, it might be well to observe that the deposits in the present case amounted to less than five per cent of the total contract price, so we are not here concerned with anything that might be termed an "unconscionable forfeiture."

The defendant's motion for summary judgment will be granted, and counsel may prepare an appropriate order incorporating this opinion by reference therein. While it does not appear that the counterclaim has been withdrawn, the final order should reflect such action in the light of this summary disposition.