ASHLAND OIL, INC.

*v.*

FORREST REX DONAHUE

(No. CC897)

Decided March 30, 1976.

*Jenkins, Schaub, Fenstermaker & Wood, Norman K. Fenstermaker* for plaintiff.

*Greene, Ketchum, Baker & Mills, Menis E. Ketchum* for defendant.

WILSON, JUSTICE:

The Circuit Court of Cabell County, West Virginia, on its own motion certified to this Court the question of the legal sufficiency of certain defenses asserted by the defendant, Forrest R. Donahue, in an action of unlawful detainer brought against him by the plaintiff, Ashland Oil, Inc., for the purpose of recovering possession of

premises previously leased by Ashland to Donahue for the operation of a gasoline service station.

In his answer, Donahue asserted certain defenses which will be hereinafter set forth in detail. By order entered on April 28, 1975, the lower court granted Ashland's motion to strike those defenses. Thereupon, Ashland moved for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure. The lower court, finding no matters to be considered outside the pleadings, treated it as a motion for judgment on the pleadings under Rule 12(c) and on May 13, 1975, entered an order granting immediate possession of the premises to Ashland.

The course of dealing out of which this controversy arose began on October 28, 1968, when Ashland and Donahue entered into a lease agreement and a dealer contract, both of which provided for a term of one year from and after November 1, 1968, and thereafter from year to year subject to termination provisions which will be hereinafter more particularly described.

Both documents related to premises on Route 60 in Ona, Cabell County, West Virginia, which were to be used and operated as a gasoline station. The lease agreement provided that Donahue was required to pay as rental a sum of money equal to one cent per gallon on each gallon of Ashland A-Plus gasoline and one cent per gallon on each gallon of Ashland gasoline, but in no event was the rental to be less than $125 per month.

The term, renewal provisions and termination provisions of the lease agreement as set forth in Paragraph II thereof are as follows:

"This lease shall be for a term of one year beginning Nov. 1, 1968, and ending Oct. 31, 1969, and shall be extended from year to year unless either party shall notify the other party in writing not less than ten (10) days before the expiration of any yearly period that it has elected not to extend same; provided, however, in the event the Lessor holds said premises under lease, the

term of this lease shall not extend beyond the term of the lease under which the Lessor holds same, and provided further that either party hereto may cancel and terminate this lease on ten (10) days' written notice to the other party at any time during the primary one (1) year term or during any extension thereof."

The term, renewal provisions and some of the termination provisions of the dealer contract as set forth in Paragraph VII thereof are as follows:

"This agreement shall be in effect for a term of 1 years from and after Nov. 1, 68, [sic] and thereafter from year to year unless either party shall have given to the other party, not less than sixty (60) days prior to the expiration of any yearly period, notice of its election to terminate same at such expiration."

However, the dealer contract provided for additional termination provisions, available only to Ashland (designated as Seller), and set forth in Paragraph VI of the dealer contract as follows:

"Buyer agrees to co-operate fully in maintaining the quality, good name and reputation of the products of the Seller, and if at any time Buyer shall default in any agreement herein or shall indulge in practices, which, in the opinion of Seller, will tend to impair the quality, good name or reputation of the products, or the good will which has been built up by the Seller, then this agreement, upon ten days' written notice to Buyer, may be terminated by the Seller, in which event Buyer shall surrender promptly to Seller all pump globes, signs, and other advertising matter displaying such trade names, as well as all of Seller's equipment for the storage, dispensing and sale of its products . . . ."

The record shows that on February 7, 1975, by separate letters, Ashland terminated both the dealer contract and the dealer lease agreement effective ten days from Donahue's recepit of said letters, and upon Dona-

hue's refusal to vacate the premises, Ashland instituted this action to recover possession thereof.

In his answer to Ashland's complaint Donahue asserted the following defenses which were stricken by the court below as legally insufficient:

"5. Defendant alleges that there was an implied covenant in the lease agreement between the parties and there was an agreement upon the part of the plaintiff not to terminate the relationship between the parties without good cause and these instruments must be reformed to include such covenant and defendant further alleges that he has substantially performed his obligations to the plaintiff under these agreements and there is not good cause to cancel his lease.

. . . .

"7. Defendant further alleges that the plaintiff also entered into a contract with him at the same time it entered into the agreement attached to the complaint, a copy of the dealer contract, being attached hereto, and that the 2 agreements together are part of an intergrated [sic] business relationship and that in fact that the parties were engaged in a joint venture and by said second agreement, and other representations, there was an implied covenant and relationship as above set forth in this answer.

"8. That the defendant has been a good operator and has built up his business, even with the opposition of the plaintiff, and that he was informed that it was not the plaintiff's policy to cancel dealer lease agreements or contracts except for good cause and based upon these representations he did enter into the agreement with the plaintiff and that they may not be cancelled unless they can show good cause for its termination.

"9. Defendant alleges that the 10 day cancellation clause contained in the agreement attached to the complaint is void as against public policy

because it is grossly unfair, the plaintiff being in a grossly superior bargaining position and that said cancellation provision is void as against public policy of the State of West Virginia and that said plaintiff does not have the right to cancel said lease agreement in the absence of showing that the defendant has failed to substantially perform his obligations under the lease and dealer contract agreement for good cause."

It is Ashland's contention that its action in unlawful detainer rests solely on the lease agreement which is clear and unambiguous in its terms, is not subject to interpretation and cannot be varied or contradicted by parol evidence in the absence of a showing of fraud or mistake. In support of its contention, it relies upon the cases of *Nettles v. Imperial Distributors*, 152 W. Va. 9, 159 S.E.2d 206 (1968); *Berkeley Co. Pub. Ser. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968); *International Nickel Co. v. Commonwealth Gas Co.*, 152 W. Va. 296, 163 S.E.2d 677 (1968); *Wyckoff v. Painter*, 145 W. Va. 310, 115 S.E.2d 80 (1960); *Bischoff v. Francesa*, 133 W. Va. 474, 56 S.E.2d 865 (1949); *Hall v. Burns*, 113 W. Va. 820, 169 S.E. 522 (1933); *Leckie v. Bray*, 91 W. Va. 456, 113 S.E. 746 (1922); *Johnson v. Burns*, 39 W. Va. 658, 20 S.E. 686 (1894); and *Clator v. Otto*, 38 W. Va. 89, 18 S.E. 378 (1893).

Donahue, however, contends that the lease and the dealer contract, executed by the same parties on the same date and involving the same subject matter, must be regarded not as separate and distinct documents but rather as documents which must be considered together as constituting an integrated business relationship.

Since the establishment of this integrated business relationship is critical to any review of the remainder of Donahue's contentions, we must first determine whether there is any sound basis for either the acceptance or rejection of Donahue's assertion of an integrated business relationship arising out of the lease agreement and the dealer contract.

It is a well-recognized principle of law that, even though writings may be separate, they will be construed together and considered to constitute one transaction when the parties are the same, the subject matter is the same and the relationship between the documents is clearly apparent. *See, D. H. Pritchard v. Nelson*, 147 F.2d 939 (4th Cir. 1945); *Minear Coal Co. v. Miller-Todd Coal Co.*, 126 W. Va. 151, 27 S.E.2d 428 (1943); *Oliver Typewriter Co. v. Huffman*, 65 W. Va. 51, 63 S.E. 1086 (1909); *Preston v. Heiskell's Trustee*, 32 Gratt 48 (Va. 1879); and *George v. Cooper*, 15 W. Va. 666 (1879).

The lease agreement and the dealer contract involved in this case are clearly agreements between the same parties; the relationship between the documents is apparent, since they deal with the operation of a gasoline station at identified premises and provide for the same initial term and automatic extensions from year to year; they provide for the sale and delivery of gasoline; they provide for the conduct of the business on the part of Donahue with skill and diligence; and the rental in the lease is tied directly to the gasoline which is provided for in the dealer contract.

A fair reading of the documents discloses that they are so interrelated on their face that either, standing alone, would be meaningless without the other and that neither Ashland nor Donahue would have entered into either the lease agreement or the dealer contract separately.

Consequently, we hold that the lease agreement and the dealer contract must be construed together and must be considered as forming an integrated business relationship.

Having resolved that question in favor of the position advocated by Donahue, we must next address ourselves to the validity of his contention that the ten-day termination clause in the dealer contract is unconscionable and should not be enforced.

In this case, considering the dealer contract and the lease agreement as a part of an integrated business

relationship, the termination provisions are indeed incapable of being reconciled in such a manner as to be clearly expressive of an intention which can be said to have been within the reasonable contemplation of the contracting parties.

For example, the lease agreement, while providing for automatic extensions from year to year in the absence of one party giving to the other written notice of its election not to extend the same not less than ten days before the expiration of any yearly period, gives either party the right to terminate the lease on ten days' written notice. The dealer contract, on the other hand, while providing for automatic extensions from year to year in the absence of one party giving to the other not less than sixty days' notice of its intention to terminate the same at the end of any yearly period, gives to Ashland alone the right to terminate at any time upon ten days' written notice to Donahue when, in Ashland's sole judgment, Donahue has indulged in practices which tend to impair the quality, good name, good will or reputation of the products of Ashland. No such reciprocal right of termination is given to Donahue, and no standard is set forth by which Ashland's judgment on such matters is to be determined or circumscribed.

Under the termination provisions of the dealer contract, Donahue had no right to terminate other than to give notice not less than sixty days prior to the expiration of any yearly period of his intention to terminate. Theoretically, therefore, if Donahue failed to terminate the dealer contract by giving such notice, he was obligated to agree to purchase and accept deliveries of gasoline for the ensuing year in the minimum and maximum quantities specified. Ashland, on the other hand, was theoretically empowered by the lease agreement to cancel Donahue's lease by giving a ten-day written notice of cancellation. The effect of such termination provisions would be completely absurd.

Donahue urges that this Court adopt the ruling of the Supreme Court of New Jersey as expressed in *Shell Oil*

*Co. v. Marinello*, 63 N.J. 402, 307 A.2d 598 (1973), *cert. denied*, 415 U.S. 920 (1974). In that case, Shell and Marinello, in 1959, had entered into a lease of service station premises and a written dealer agreement, both of which had been modified and renewed so that, at the time of the dispute which led to litigation, the lease agreement was terminable by Marinello upon ninety days' notice and by Shell upon thirty days' notice, and the dealer agreement was terminable by Shell upon ten days' notice. Shell, by letter dated April 14, 1972, terminated both the lease and the dealer agreement effective May 31, 1972. Marinello sought to enjoin Shell from terminating the lease and dealer agreement. After a trial which lasted for nine days, the trial court found in favor of Marinello, and on appeal, the New Jersey Supreme Court held, at 307 A.2d 603, as follows:

> "... (1) that the lease and dealer agreement herein are integral parts of a single business relationship, basically that of a franchise, (2) that the provision giving Shell the absolute right to terminate on 10 days notice is void as against the public policy of this State, (3) that said public policy requires that there be read into the existing lease and dealer agreement, and all future lease and dealer agreements which may be negotiated in good faith between the parties, the restriction that Shell not have the unilateral right to terminate, cancel or fail to renew the franchise, including the lease, in absence of a showing that Marinello has failed to substantially perform his obligations under the lease and dealer agreement, *i.e.*, for good cause, and (4) that good cause for termination has not been shown in this case."

The New Jersey Supreme Court based its decision upon an extension of views which had been expressed by that same court in *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960) and *Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 236 A.2d 843 (1967). The theory of those cases involved the disparity in bargain-

ing power between "... a commercial party and a non-commercial consumer of that party's goods or services." 28 U. Miami L. Rev., 710, 712. In the *Marinello* case, the principle was expanded to include two commercial parties. The rationale of the *Marinello* decision was a finding by the court that there was grossly disproportionate bargaining power between Shell and Marinello to such an extent that Shell could impose its own terms in a grossly unfair manner thereby directly affecting the public in an adverse manner.

In response to Donahue's insistence that this Court should follow the *Marinello* rule not only in finding unconscionability in a business relationship whose termination provisions are dictated by a disparity in bargaining power but also by precluding termination except upon a showing of good cause, Ashland argues that the New Jersey decision amounts to a complete usurpation of the rights of a property owner and is not supported by the cases decided in other jurisdictions.

In support of its argument against the *Marinello* rule, Ashland has cited and discussed numerous cases which cannot be lightly regarded. However, the cases upon which Ashland relies fail to provide to this Court adequate guidelines for the resolution of the issues involved in the instant case. For example, *Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211 (9th Cir. 1970), *cert. denied*, 401 U.S. 939 (1971); *Amplex of Maryland, Inc., v. Outboard Marine Corp.*, 380 F.2d 112 (4th Cir. 1967), *cert. denied*, 389 U.S. 1036 (1968); and *Ford Motor Co. v. Webster's Auto Sales, Inc.*, 361 F.2d 874 (1st Cir. 1966), were cases involving alleged monopolistic practices. In *United States Brewers' Ass'n. v. Nebraska*, 192 Neb. 328, 220 N.W.2d 544 (1974); *Superior Motors, Inc. v. Winnebago Industries, Inc.*, 359 F. Supp. 773 (D. S.C. 1973); and *Globe Liquor Co. v. Four Roses Distillers Co.*, 281 A.2d 19 (Del. Supr. 1971), *cert. denied*, 404 U.S. 873 (1971), the unconstitutionality of certain statutes controlled the holdings. *Artman v. International Harvester Co.*, 355 F.

Supp. 482 (W.D. Pa. 1973) involved termination provisions which had been specifically sanctioned by a Pennsylvania statute. In *AFA Distributing Co. v. Pearl Brewing Co.*, 470 F.2d 1210 (4th Cir. 1973), the 4th Circuit applied the doctrine of abstention on the premise that a Virginia statute which was vague and needed to be construed should have been left to a determination by the State courts. *Scanlan v. Anheuser-Busch, Inc.*, 388 F.2d 918 (9th Cir. 1968), *cert. denied*, 391 U.S. 916 (1968), involved only an oral contract on an order-to-order basis and did not lend itself to any determination by a jury that such dealership was terminable only for cause. In *Russell v. Shell Oil Co.*, 382 F. Supp. 395 (E.D. Mich. 1974), Shell had given notice that it would not renew a lease and dealer agreement when they expired. Finally, in *Division of Triple T Service, Inc. v. Mobil Oil Corp.*, 60 Misc. 2d 720, 304 N.Y.S.2d 191 (1969), the court refused to find unconscionability in cancellation provisions of a service station lease and a retail dealer contract which provided that either party had the right to cancel the lease upon ninety days' notice except that Mobil was given the additional right to cancel on thirty days' notice during the first twelve months of the agreements.

Although those cases contain statements from which Ashland may draw support for its position, it is apparent that none of the cases involved a determination of the issues with which this Court is confronted at the pleading stage in this case.

The posture of the instant case, involving merely the legal sufficiency of certain defenses asserted by Donahue, does not lend itself to a full adoption of the holdings in the *Marinello* case which was on appeal after a trial lasting nine days. Similarly, it will not permit us to be persuaded by the distinguishable cases cited by Ashland.

Having determined in this case that the lease agreement and the dealer contract should be construed together and considered to be one transaction, it is clear that what is involved is a transaction in goods (petro-

leum products) which is governed by the Uniform Commercial Code—Sales. *See, W. Va. Code* 46-2-102 and 46-2-105.

In Donahue's 9th defense, *supra,* he claims in substance that the ten-day cancellation clause contained in the dealer agreement, and available only to Ashland, was and is unconscionable on its face. We agree and so hold in this case. However, we do not find it necessary to base our holding upon a disparity in bargaining power between Ashland and Donahue. In most commercial transactions it may be assumed that there is some inequality of bargaining power, and this Court cannot undertake to write a special rule of such general application as to remove bargaining advantages or disadvantages in the commercial area, nor do we think it necessary that we undertake to do so.

In a case such as this, the rules by which transactions should be governed are generally stated in the Uniform Commercial Code—Sales, and within that framework, we believe that defenses may be made and proof may be offered in a manner sufficient to protect the commercial rights of all parties whether they be economically strong or weak. There is imposed upon both parties to a business transaction an obligation of good faith in its performance or enforcement. *See, W. Va. Code* 46-1-203. The test of "good faith" in a commercial setting is ". . . honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *W. Va. Code* 46-2-103(1)(b).

The application of these rules cannot be determined by this Court in this case which is before us only on the certification of the legal sufficiency of certain defenses. Evidence is required; provision is made for it by statute; the other defenses set forth by Donahue dictate its prospective scope; and the lower court is required to give both parties a reasonable opportunity to present it.

Having determined that the ten-day cancellation provision is unconscionable, we cannot and do not leave the parties with an irrevocable relationship. The lower court

must now determine whether to refuse to enforce the agreement, or to enforce it without the unconscionable clause or to limit the unconscionable clause so as to avoid an unconscionable result. *See, W. Va. Code* 46-2-302(1). For the purpose of making this determination, the lower court should receive evidence regarding the commercial setting, purpose and effect of the transaction. *See, W. Va. Code* 46-2-302(2). Likewise, for the purpose of avoiding any harsh result from a too narrow adherence to the commercial setting of traditional oil company—dealer transactions, Donahue should be given full opportunity to develop his defenses 5, 7 and 8, *supra*, by way of explaining or supplementing the written instruments. *See, W. Va. Code* 46-2-202. This procedure also does no violence to the traditional parol evidence rule relied upon by Ashland, because with its ten-day cancellation clause declared unconscionable, an element of vagueness and ambiguity exists which would make parol evidence admissible.

Donahue's 5th defense, *supra*, by asserting that there was an agreement on the part of Ashland not to terminate the relationship without good cause bears directly on the issue of termination; his 7th defense, *supra*, to the effect that Ashland by reason of the two agreements and "other representations" entered into a "joint venture" with him may have a bearing on the issue of termination; and finally his 8th defense, *supra*, in which he alleges that he relied upon representations made by Ashland to him that it would not cancel the agreements except for good cause has a direct relationship to the issue of termination.

It is apparent that Ashland and Donahue have dealt with each other consistently since 1968. Both would presumably be knowledgeable with reference to the commercial requirements of the conduct of a gasoline service station business. The nature of commercial arrangements in terms of credit (that which is extended by and to Donahue and by and to Ashland for business purposes) and other business arrangements necessarily entered into in support of the operation of a gasoline

service station are surely within the business experience of both Ashland and Donahue. During the period of their relationship there may have been dealings or usages common in the business or trade which have been relied upon by each. Likewise, there may have been customs of performance which have been known and relied upon by each. Similarly there may have been additional terms surrounding the integrated business relationship known and accepted by both Ashland and Donahue.

Donahue has fairly raised these matters by his defenses 5, 7 and 8, *supra,* and at the pleading stage, they stand as adequate statements of defense to the action in unlawful detainer instituted by Ashland.

For the reasons stated in this opinion, we hold that the defenses asserted by Donahue are sufficient defenses under the laws of the State of West Virginia; we reverse the ruling of the Circuit Court of Cabell County, West Virginia, granting judgment on the pleadings; and we remand the case to the Circuit Court of Cabell County, West Virginia, for further proceedings in accordance with this opinion.

*Reversed and remanded*
*with directions.*