**HIGHWAY EQUIPMENT COMPANY,**
**Plaintiff–Appellant,**

v.

**CATERPILLAR INC.,**
**Defendant–Appellee.**

No. 89–3403.

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1990.

Decided July 11, 1990.

Rehearing and Rehearing En Banc
Denied Sept. 4, 1990.

Charles G. Atkins (argued), John J. Fossett, Strauss & Troy, Charles G. Heyd,

Bauer, Morelli & Heyd, Cincinnati, Ohio, for plaintiff-appellant.

William R. O'Brien (argued), Robert M. Bruskin, Howrey & Simon, Washington, D.C., David L. Barth, Cors, Bassett, Kohlhepp, Halloran & Moran, Joseph H. Vahlsing, Cincinnati, Ohio, for defendant-appellee.

Before MARTIN and BOGGS, Circuit Judges, and JOINER, Senior District Judge.[*]

BOGGS, Circuit Judge.

Highway Equipment Company (Highway) sued Caterpillar Inc., Caterpillar Financial Services Corp., B.D. Holt Co., Inc., and Benjamin D. Holt[1] for breach of a franchise agreement. All defendants except Caterpillar Inc. (Caterpillar) were dismissed before trial. The case was tried before a jury in March and April, 1989, and the jury returned a verdict for Caterpillar. Finding that the verdict was not erroneous as a matter of law, we affirm.

## I

### A

The franchise relationship between Highway and Caterpillar was governed by a Sales and Service Agreement (the Agreement). After Caterpillar unilaterally terminated the Agreement, Highway filed a complaint seeking injunctive relief and money damages. The district court granted Highway's motion for a temporary restraining order on April 2, 1985, but it denied a motion for a preliminary injunction on June 12, 1985.

Proceedings were stayed until June 1988, when Highway, through its Chapter 11 bankruptcy trustee, filed an amended seven-count complaint seeking $150,000,000 in compensatory damages and $50,000,000 in punitive damages. The first count alleged breach of contract and violations of the Illinois Franchise Disclosure Act (IFDA),

Ill.Stat.Ann. ch. 121½, ¶ 701 et seq., and Illinois common law. The second, third, and fourth counts alleged other contract violations. The fifth count alleged a breach of the covenant of good faith and fair dealing. The sixth and seventh counts alleged common law fraud.

On October 24, 1988, the court granted Caterpillar's motion for judgment on the pleadings on Count One of the complaint, on the ground that the IFDA could not be applied extraterritorially. At the same time, the court denied Caterpillar's motions to strike Highway's jury demand and to preclude Highway from presenting to the jury evidence heard by the judge at the preliminary injunction hearing. On February 27, 1989, the court granted summary judgment to Caterpillar on Count Five of the complaint, to the extent that it alleged an independent cause of action based on a breach of the covenant of good faith and fair dealing, reasoning that the implied covenant did not impose a "good cause" termination requirement on the Agreement. 707 F.Supp. 954. The court denied summary judgment in all other respects. Highway moved for partial summary judgment on the issue of liability, but the court did not rule on the motion before the case went to trial.

### B

Highway was a heavy equipment dealer in Cincinnati. Caterpillar is a manufacturer of earthmoving and construction equipment based in Peoria, Illinois. Before June 12, 1985, Highway was a dealer of Caterpillar's heavy equipment, operating under the terms of the Agreement. Highway's president and principal stockholder was Albert E. Norman, Jr. Mr. Norman and a minority investor purchased all of the Highway stock from the previous shareholder of Highway in 1969 and succeeded to the position of Caterpillar dealer under the then existing Sales and Service Agreement. On May 14, 1973, Mr. Norman and

---

[*] The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Holt is the grandson of Caterpillar Inc.'s founder and a principal of the company that received Highway's franchise after Highway was terminated.

Caterpillar executed a new Sales and Service Agreement, which was modified in 1982 and in 1983. Paragraph 29 of this Agreement allowed either party to terminate the relationship without cause by giving ninety days' notice. The Agreement had no termination date.

On January 3, 1985, Caterpillar informed Highway that it intended to terminate the Agreement. On June 12, 1985, the Agreement was terminated by Caterpillar. After termination, Highway lost 80% of its business and filed for protection under the bankruptcy laws.

Caterpillar purportedly terminated the Agreement because Highway was operating with dangerously low capital. Caterpillar insists that its dealers maintain substantial available capital in order to keep an adequate inventory of machines and parts and provide proper customer service. Caterpillar believed that Highway's level of capital had dropped below acceptable levels.

Highway asserts that its relative economic condition was no worse than that of other Caterpillar dealers, or Caterpillar itself, during the early 1980s. Highway alleges that Caterpillar itself lost more $1 billion from 1982 to 1984. Highway concedes that it lost money in 1982 and 1983 but maintains that those were the only years in which Highway lost money. It also acknowledges that it suffered a decline in equity from almost $9,000,000 in 1981 to about $4,500,000 in 1984.

Caterpillar claims that these losses were caused by Mr. Norman's poor management. Caterpillar also contends that if Highway had written off as uncollectible receivables the amounts owed to it by two insolvent companies (about $5,000,000), its book equity in 1984 would have been negative. Highway's financial condition was the worst among the 83 domestic Caterpillar dealers. Highway's liability-to-equity ratio was 6.4 to 1, compared to a ratio of 1.7 to 1 for all dealers. Highway's potential bank-ruptcy was of great concern to Caterpillar because of the threat it posed to Caterpillar's business image in Highway's territory.

After a four-week trial, the jury found for Caterpillar on all claims. In response to special interrogatories, the jury found that Caterpillar had the right, under paragraph 29 of the Agreement, to terminate Highway without cause, but that in any case Caterpillar had shown good cause for termination.

## II

### A

█ The district court determined that Highway could not bring a claim under the IFDA. Although the parties contracted to have Illinois law govern the Agreement,[2] the district court ruled that the IFDA does not apply to dealerships outside Illinois and therefore did not constitute part of the law governing the Agreement. Highway argues on appeal that neither the Illinois Supreme Court nor the Illinois state legislature has ever expressed an intention to limit the IFDA to dealers located in Illinois and that the district court had no authority on which to rest its ruling.

The relevant portion of the IFDA, ch. 121½, ¶ 704.3, states:

(a) [i]t shall be a violation of this Act for a franchisor or subfranchisor to terminate a franchise prior to the expiration of its term except for "good cause" as provided in subsection (b) or (c).

(b) "Good cause" shall include, but not be limited to, the failure of the franchisee or subfranchisor to comply with any lawful provision of the franchise or other agreement and to cure such default after being given notice thereof and a reasonable opportunity to cure such default, which in no event need be more than 30 days.

(c) "Good cause" shall include, but without the requirement of notice and an

2. The Agreement contained a choice-of-law provision designating Illinois law as the parties' law of choice. The Agreement was executed in Illinois. Caterpillar's principal place of business is Peoria, Illinois. Highway's president, Al Norman, was an Illinois resident at the time the Agreement was executed.

opportunity to cure, situations in which the franchisee or subfranchisor:

(1) is adjudicated a bankrupt or insolvent;

(2) makes an assignment for the benefit of creditors or a similar disposition of the assets of the franchise business;

(3) voluntarily abandons the franchise business;

(4) is convicted of a felony or other crime which substantially impairs the good will associated with the franchisor's trademark, service mark, trade name or commercial symbol; or

(5) repeatedly fails to comply with the lawful provisions of the franchise or other agreements.

Highway argues that the protections of the IFDA extend to Highway in its franchise relationship with Caterpillar. It contends that since paragraph 39 of the Agreement provides for Illinois law to govern, the "good cause" requirement of the IFDA applies; Caterpillar's right to terminate the Agreement without cause, therefore, is superseded by ¶ 704.3(a) of the statute. In finding the IFDA inapplicable, the district court relied on *In re Montgomery Ward Catalog Sales Litigation*, 680 F.Supp. 182 (E.D.Pa.1987), *aff'd without opinion*, 856 F.2d 182 (3d Cir.1988). Highway argues that *Montgomery Ward* is not controlling authority and contravenes the case law in this circuit.

In *Montgomery Ward*, the federal district court was faced with the issue of whether the IFDA applied to a Pennsylvania franchise where the parties had agreed that Illinois law should govern their agreement. The court refused to apply the IFDA, finding that at the time the IFDA was enacted, the Illinois Supreme Court had stated that it would not give extraterritorial effect to Illinois statutes unless the legislature expressly directed it to do so. *See Graham v. General U.S. Grant Post No. 2665, V.F.W., et al.*, 43 Ill.2d 1, 248 N.E.2d 657, 660 (1969) (refusing to give extraterritorial effect to the Illinois Dram Shop Act). The IFDA does not indicate any intention by the legislature to extend the statute to franchises located outside Illinois.

The *Montgomery Ward* court examined the history behind the IFDA and concluded that the legislature intended for the IFDA to benefit Illinois residents only. This conclusion is substantiated by the fact that in 1988, the Illinois legislature reenacted the IFDA as the Franchise Disclosure Act of 1987 and confirmed that the statute is intended to protect Illinois residents only. Ill.Rev.Stat. ch. 121½, ¶ 1702.

Highway does not present any evidence that the IFDA was intended to apply outside Illinois, but it insists that this circuit has applied analogous state statutes extraterritorially. In *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818 (6th Cir.1977), we gave extraterritorial application to the Wisconsin Fair Dealership Law (WFDL). Brunswick, the maker of Mercury Marine products, and its dealer Boatland entered a contract with a choice-of-law clause providing that Wisconsin law governed. When Brunswick terminated the relationship, Boatland sued, alleging violations of the WFDL. Brunswick argued that the WFDL did not apply since Boatland's dealership was located in Tennessee. The district court agreed with Brunswick, but a panel of this court reversed. We held that the contract was governed by the law intended by the parties and that any ambiguity in the contract should be construed against the drafter, Brunswick. Brunswick was therefore estopped from arguing that Wisconsin's statutes were inapplicable out of state.

*Boatland*, however, is inapposite because we were concerned in that case with Wisconsin, not Illinois, principles of statutory construction. Furthermore, *Boatland* has been superseded by our decision in *The Bimel–Walroth Co. v. Raytheon Co.*, 796 F.2d 840 (6th Cir.1986), where we held that the WFDL did not apply to a distributor in Ohio that had a contract with a manufacturer in Wisconsin. We based our decision both on the fact that "in *Boatland* we did not recognize the anomaly of interpreting a Wisconsin legislative enactment for the benefit of a Tennessee dealer in a Tennes-

see court against the interests of a Wisconsin manufacturer" and on the fact that the Wisconsin legislature, probably "in response to the decision in *Boatland*," amended the WFDL in 1977 to clarify that the statute only applied to dealers in Wisconsin. *Id.* at 842. Highway argues that *Bimel–Walroth* is distinguishable because the IFDA was not explicitly limited to Illinois dealers at the time Highway was terminated. We disagree, and conclude that the IFDA was enacted for the protection of Illinois residents only.

The only case cited by Highway in which the IFDA was applied extraterritorially is *Lockard v. Milex Products, Inc.*, No. 87AP–851, 1988 WL 37605, 1988 Ohio App. LEXIS 1379 (Ct.App. April 14, 1988) (applying the IFDA to an agreement between an Illinois manufacturer and an Ohio distributor). The holding in *Lockard* is not relevant here, since the Ohio court applied the IFDA in Ohio without objection. As neither party raised the issue of the IFDA's applicability, the court never addressed the question we face. We hold that the IFDA is not material to a proper interpretation of the Agreement and does not operate in this case to impose a good cause requirement for termination.

**B**

■ Without regard to the IFDA, Highway argues that the Illinois common law and public policy impose a "good cause" requirement on Caterpillar. Highway emphasizes that Caterpillar made binding admissions that it terminated Highway without cause and that Highway did not breach the Agreement. In answers to interrogatories made during the discovery process, Caterpillar stated that "paragraph 29 of the ... Agreement affords either party the right to terminate without cause on 90 days notice. Termination of Highway was made pursuant to said provision." Also, during his deposition, Donald Fites, executive vice president of Caterpillar, confirmed that

Caterpillar terminated Highway without cause. John Murray, regional manager of Caterpillar, admitted at trial that he stated in his deposition that Highway did not breach any term of the Agreement or default under the Agreement.

In *Dayan v. McDonald's Corp.*, 125 Ill. App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958, 973 (Ct.App.1984), an Illinois court defined good cause as "a failure to substantially comply with obligations under the agreement." Highway argues that the reasons Caterpillar cites for terminating Highway do not constitute good cause because they do not suggest that Highway failed to comply with the terms of the Agreement.

Caterpillar argued to the jury that Highway's allegedly weak financial position justified the termination. Highway claims that this justification does not comply with the *Dayan* definition of good cause. The jury received an instruction, however, that included the definition of good cause found in *Dayan*. The instruction stated in pertinent part:

The term "good cause" has been defined as a failure to substantially comply with obligations under the agreement. The underlying concept centers upon a determination of commercial reasonability. And I point out, members of the jury, that is one definition of good cause.

We reject Highway's assertion that the last sentence of the instruction vitiated the rest of the charge. The district court was within its discretion to point out that the Illinois common law definition of good cause is not limited to the language in *Dayan*. Therefore, even assuming, without deciding, that Illinois common law imported a good cause requirement into paragraph 29 of the Agreement, we hold that the jury's determination that Caterpillar had good cause for terminating Highway is valid. No reason exists for overturning that verdict.[3]

**C**

■ Highway's final argument is that paragraph 29 of the Agreement is uncon-

---

**3.** We note that the contract at issue in *Dayan* did not provide for termination without cause. We know of no case in which an Illinois court has applied a good cause obligation to a contract, not subject to the Uniform Commerical Code, with an express clause permitting termination at will.

scionable because Caterpillar occupied an unfairly superior bargaining position at the time the Agreement was executed and because Caterpillar forced Highway to accept a provision permitting Caterpillar to terminate the relationship without cause. We find no merit in this argument.

To be unconscionable, a contract must be one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man could accept, on the other." *Neal v. Lacob,* 31 Ill.App.3d 137, 334 N.E.2d 435, 439 (Ct.App.1975) (quoting *Hume v. United States,* 132 U.S. 406, 410, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889)). The test of unconscionability poses a very great burden, one which Highway has not met.

The termination clause in paragraph 29 gave both parties equal rights. If Caterpillar tractors were selling slowly, Highway could have switched to selling a competitor's equipment, and Caterpillar would have had no cause to complain. The parties here intended to have an agreement terminable without cause, and it was a reasonable deal.

There is no evidence that Highway had been forced to enter into a deal with Caterpillar. There is no evidence that Mr. Norman, the Highway president, was unsophisticated in business. In fact, he had many years of business experience. There was nothing oppressive about the circumstances under which Mr. Norman agreed to the Caterpillar contract.

The result Highway urges would invalidate thousands of similar termination-at-will clauses in existing contracts. The mutual, no-cause termination clause is fair on its face and is not voidable. "When a contract contains a provision expressly sanctioning termination without cause there is no room for implying a term that bars such a termination." *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129, 138 (5th Cir.), *cert. denied,* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979).

The judgment for Caterpillar is affirmed.