**INFOMAX OFFICE SYSTEMS, INC., Plaintiff,**

v.

**MBO BINDER & CO. OF AMERICA, Defendant.**

**Civil No. 4–97–90304.**

United States District Court, S.D. Iowa, Central Division.

Sept. 8, 1997.

---

R. Todd Gaffney, Kerry A. Finley, Des Moines, IA, for Plaintiff.

David L. Charles, Des Moines, IA, Alan Kanzer, New York City, for Defendant.

### MEMORANDUM OPINION AND RULING ON DEFENDANT'S MOTION TO DISMISS

PRATT, District Judge.

### MEMORANDUM AND RULING

Plaintiff filed a four-count complaint against defendant. Defendant moved to dismiss three counts pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's motion to dismiss is granted.

#### Background Facts and Proceedings

On April 28, 1997, the plaintiff, Infomax Office Systems, Inc. (Infomax), filed a complaint against the defendant, MBO Binder & Co. (MBO). The complaint contained four counts: breach of contract (count I), breach of good faith and fair dealing (count II), breach of the Illinois Franchise Disclosure Act (count III), and interference with Infomax's business relations (count IV). These claims were made under the law of Illinois pursuant to the parties' choice-of-law clause.

Infomax is an Iowa corporation and has its principal place of business in Des Moines.

MBO is a Delaware corporation authorized to do business in Iowa. MBO is headquartered in New Jersey and does not have its principal place of business in Iowa.

The complaint arose out of a January 6, 1988 "dealer agreement" and a July 9, 1996 notice from MBO terminating the dealer agreement. The dealer agreement contained the following relevant provisions:

> 3. *Term of Agreement.* The term of the distributorship granted by this Agreement begins today and ends on a date forty-five (45) days following written notice of termination, *with or without cause,* by either party to the other . . .
>
> 8. *Miscellaneous.*
>
> . . . .
>
> d). *This Agreement shall be governed and construed in accordance with Illinois law* and shall be deemed to have been entered into at MBO America's offices in Westmont, Illinois.

(Emphasis added.)

On May 29, 1997, MBO filed a motion to dismiss counts I through III. Infomax subsequently dropped its breach of contract claim (count I). Count IV, interference with business relations, is not at issue in this motion. As to counts II and III, MBO made the following arguments: (1) under Illinois law, exercising an express right to terminate at will does not violate any implied covenant of good faith and fair dealing; and (2) Infomax does not come within the protection of the Illinois Franchise Disclosure Act because Infomax does not do business in Illinois.

On June 6, 1997, Infomax filed a resistance stating that (1) "based upon the facts alleged in its complaint, Infomax has articulated recoverable claims pursuant to Illinois common law," and (2) "the Illinois Franchise Act should be applied to this action."

On June 13, 1997, MBO replied and reiterated its earlier arguments.

An oral hearing on MBO's motion was held on July 31, 1997. This matter is now fully submitted.

## Standard of Review

### Rule 12(b)(6) Motion to Dismiss

MBO moved to dismiss under Federal Rule of Civil Procedure 12(b). Although MBO did not specify which of the numerous options under Rule 12(b) it sought to apply, Rule 12(b)(6)'s "failure to state a claim upon which relief can be granted" appears the obvious choice.

Unlike a summary judgment motion, which is decided on the basis of a factual record, a Rule 12(b)(6) motion to dismiss for failure to state a claim requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted.[1] Fed.R.Civ.P. 12(b)(6), 56(c); *Kane v. Iowa Dep't of Human Serv.,* 955 F.Supp. 1117, 1121 n. 1 (N.D.Iowa 1997). In considering a motion to dismiss under Rule 12(b)(6), the court must assume all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 *U.S.* 41, 45–46, 78 *S.Ct.* 99, 101–02, 2 *L.Ed.*2d 80 (1957). The issue is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes,* 416 *U.S.* 232, 236, 94 *S.Ct.* 1683, 1686, 40 *L.Ed.*2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 *F.*2d 1373, 1376 (8th Cir.1989). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 *U.S.* at 45–46, 78 *S.Ct.* at 102. The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 *U.S.* 319, 327, 109 *S.Ct.* 1827, 1832–33, 104 *L.Ed.*2d 338 (1989). It is only in the "unusual case" where the complaint on

---

**1.** A motion to dismiss for failure to state a claim upon which relief can be granted is addressed to the face of the pleading which, for purposes of the motion, is deemed to include any document attached to it as an exhibit or any other document incorporated by reference. Fed.R.Civ.P. 10(c), 12(b)(6); *Morton v. Becker,* 793 *F.*2d 185,

187 (8th Cir.1986); *Goldman v. Belden,* 754 *F.*2d 1059, 1065–66 (2nd Cir.1985); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (2d ed. 1990). In this case the dealer agreement was attached to the original complaint as Exhibit A.

its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. *Fusco v. Xerox Corp.*, 676 *F*.2d 332, 334 (8th Cir.1982).

A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. *Rogers v. Bruntrager*, 841 *F*.2d 853, 855 (8th Cir.1988). Federal Rule of Civil Procedure 15(a) states that "leave to amend shall be freely given when justice so demands."

### Discussion

■ There are two fighting issues before this court. Both issues arise from the parties' agreement that their contract "shall be governed and construed in accordance with Illinois law." This action is brought in the United States District Court for the Southern District of Iowa. Therefore, we must determine the applicable law as would a court of the state of Iowa. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 *U.S.* 487, 496–97, 61 *S.Ct.* 1020, 1021–22, 85 *L.Ed.* 1477 (1941). Since an Iowa court, under established principles, would honor a contractual choice of law and apply the law of Illinois in this case, this court shall do the same. *See Cole v. State Auto. & Cas. Underwriters*, 296 *N.W*.2d 779, 781–82 (Iowa 1980)(recognizing choice-of-law clauses).

The first issue relates to the common law of Illinois, while the second relates to an Illinois statute. The parties disagree about the impact of Illinois law on the provision of their agreement which states that termination after the prescribed notice may be "with or without cause." Under the common law of Illinois, Infomax argues, franchisors may only terminate franchise agreements for good cause even when there exists an express with-or-without-cause termination provision. The Illinois Franchise Disclosure Act, 815 Ill. Comp. Stat. 705/19 (1997), Infomax further argues, also mandates franchise agreement terminations be only for good cause and without regard to any express provisions to the contrary. MBO argues that (1) Illinois common law does not mandate good cause for terminations when the parties expressly contract otherwise and (2) the Illinois Franchise Disclosure Act does not apply.

### Breach of Implied Covenant of Good Faith

■ Infomax relies on *Dayan v. McDonald's Corp.*, 125 *Ill.App.*3d 972, 81 *Ill. Dec.* 156, 466 *N.E.*2d 958 (1984), for its argument that the implied covenant of good faith overrides an express "with or without" cause termination provision. The dispute in *Dayan* arose when McDonald's attempted to terminate its Parisian franchisee. The franchise agreement specified the McDonald's corporation had the right to terminate if "[the franchisee] shall default in the performance of any term of this agreement and shall fail to remedy such default within sixty (60) days after written notice...." *Dayan,* 81 *Ill.Dec.* at 161–62, 466 *N.E.*2d at 963–64. Dayan, the franchisee, sued under Illinois law to enjoin the termination, arguing he had substantially performed his contractual obligations and that McDonald's was motivated to terminate by a desire to take over his lucrative Parisian franchise territory. *Id.*, 81 *Ill.Dec.* at 171, 466 *N.E.*2d at 973–74.

The trial court found that McDonald's had terminated Dayan's franchise with good cause because Dayan's restaurants did not meet the cleanliness and quality standards required under the franchise contract. *Id.*, 81 *Ill.Dec.* at 173–74, 466 *N.E.*2d at 975–76. The Illinois Appellate Court upheld the trial court's finding of good cause. On appeal, however, Dayan argued that "good cause" was not sufficient to prove "good faith" termination when a franchisor has an improper motive. *Id.*, 81 *Ill.Dec.* at 169, 466 *N.E.*2d at 971. Once again, the Appellate Court agreed with the trial court:

> The most widely recognized privilege to act regardless of motive is furnished by the existence of good cause. There are myriads of cases recognizing that good cause to take a particular action will constitute a defense to a finding that the actor is in bad faith.... [W]here there is good cause, there is no bad faith.

*Id.*, 81 *Ill.Dec.* at 172, 466 *N.E.*2d at 974 (quoting Arthur L. Corbin, Corbin on Contracts §§ 654D, 1266 (Supp.1982)).

En route to this conclusion, the court stated "the implied covenant of good faith restricts franchisor discretion in terminating a

franchise agreement to those cases where good cause exists." *Dayan*, 81 *Ill.Dec.* at 171, 466 *N.E.*2d at 973. In the context of the case before the court at the time, in which there was no express provision allowing termination without cause and there were express terms listing certain breaches that could result in termination, this statement seems thoroughly superfluous. The implied covenant of good faith is uniformly understood as a "residual gap-filling default rule of contract law." Thomas A. Diamond & Howard Foss, *Proposed Standards for Evaluating When the Covenant of Good Faith and Fair Dealing Has Been Violated: A Framework for Resolving the Mystery*, 47 Hastings L.J. 585, 586 (1996); *see* 62B Am.Jur.2d *Private Franchise Contracts* § 512 (1990); E. Allan Farnsworth, *Good Faith Performance and Commercial Reasonableness Under the Uniform Commercial Code*, 30 Univ. Chi. L.Rev. 666, 672 (1963)("[T]he chief utility of the concept of good faith performance has always been as a rationale in a process . . . of implying contract terms. . . ."). This has been true in the common law of Illinois as well. *See, e.g., Beraha v. Baxter Health Care Corp.*, 956 *F.*2d 1436, 1443 (7th Cir.1992)(interpreting Illinois law and stating "the covenant guides the construction of explicit terms in an agreement"); *Foster Enter., Inc. v. Germania Fed. Sav. & Loan Assoc.*, 97 *Ill.App.*3d 22, 52 *Ill.Dec.* 303, 308, 421 *N.E.*2d 1375, 1380 (1981)("There can not be any doubt that a covenant of good faith and fair dealing is implied into every contract absent express disavowal. This rule has been codified in our law of sales and negotiable instruments . . . and is part of our common law heritage."). A gap-filler, such as the implied covenant of good faith, would have no place under the termination provisions of the *Dayan* franchise agreement—no gap to fill. Termination, under the express terms of the franchise agreement, could happen only for certain specified reasons. In the words of the agreement itself, McDonald's had the right to terminate if "Dayan shall default in the performance of any term of this agreement and fail to remedy such a default within sixty (60) days after written notice. . . ."

The purpose of the implied covenant, in Illinois and elsewhere, has always been to protect the contractual purpose or expectations of the parties surrounding their agreement. *See Beraha*, 956 *F.*2d at 1443–44; *see also* Diamond & Foss, *supra*, at 625–26; Farnsworth, *supra*, at 666 (defining a good faith obligation as "an implied term of the contract requiring cooperation on the part of one party to the contract so that another party will not be deprived of his reasonable expectations"); *Cf Alderman Drugs, Inc. v. Metropolitan Life Ins. Co.*, 161 *Ill.App.*3d 783, 113 *Ill.Dec.* 704, 515 *N.E.*2d 689 (1987). The implied covenant of good faith requirement of good cause could not add anything to the parties' clear and express intentions delineated in the contract. Presumably the parties have already listed what they expected to be good cause for termination when the termination provision was written referring to "any term of this agreement." In fact, neither side was asking for additional terms to find "good cause," they were only concerned as to whether good cause was sufficient.

It seems that the only possible purpose for discussing the implied covenant of good faith would be to create a free-standing guide to rewrite or override even clear and express intentions. In other words, the agreed provisions that specify the parties intended causes for termination would still be held up to the court's own ideal standard of "good cause."

The only authority cited for this remarkable move came from two isolated cases from other jurisdictions: *Shell Oil Co. v. Marinello*, 63 *N.J.* 402, 307 *A.*2d 598 (1973); and *Ashland Oil, Inc. v. Donahue*, 159 *W.Va.* 463, 223 *S.E.*2d 433 (1976). The *Dayan* court read these cases as having used the implied covenant of good faith in "refusing to enforce *express* contractual provisions authorizing petroleum suppliers to terminate franchise agreements with their dealers without good cause." *Dayan*, 81 *Ill.Dec.* 156, 466 *N.E.*2d at 973 (emphasis added). Close examination of *Marinello* and *Ashland Oil*, however, shows they do not support the decision in *Dayan*.

In *Marinello*, the court did not use the implied covenant of good faith to void express contractual language. Instead, the court used the doctrine of unconscionability

which ignores even express language if it violates clear public policy or is the result of a contract of adhesion. *Marinello*, 307 *A.2d* at 601–02 (explicitly applying unconscionability analysis from *Ellsworth Dobbs, Inc. v. Johnson*, 50 *N.J.* 528, 236 *A.2d* 843 (1967)); *see generally*, Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L.Rev. 369, 371 n. 14 (1980)("Unconscionability ... is a limitation on freedom of contract that allows the courts to police the bargaining relationship and to override the manifested intention of the parties in the interest of justice."). Furthermore, the court did not find the termination provision unconscionable on its face, but instead inquired into the bargaining relationship of the two parties and found that relationship lacking in any meaningful equality. *Marinello*, 307 *A.2d* at 601–02. The *Marinello* court also did not make any sweeping proclamation that all future franchise terminations must be for good cause even if specific terms granted termination rights "without cause": the court merely stated that all future contracts *between the two parties involved* must be read to contain a good cause requirement. *Id.*, 307 *A.2d* at 602.

The West Virginia Supreme Court, in *Ashland Oil*, also applied the doctrine of unconscionability and not the implied covenant of good faith. *Ashland Oil*, 223 *S.E.2d* at 440. *Ashland Oil* has nothing to say regarding the implied covenant of good faith and termination provisions. Any possible indications to the contrary were certainly clarified in *Barn–Chestnut, Inc. v. CFM Dev. Corp.*, 193 *W.Va.* 565, 457 *S.E.2d* 502 (1995), when the West Virginia Supreme Court stated while discussing *Ashland Oil:* "[W]here the express intention of contracting parties is clear, a contrary intent will not be created by implication. The implied covenant of good faith and fair dealing cannot give contracting par-

ties rights which are inconsistent with those set out in the contract." *Barn–Chestnut*, 457 *S.E.2d* at 509.

 Although this court will always follow a state supreme court's interpretation of its law, dicta from a single intermediate appellate court will only be followed if it is a good predictor of what the state supreme court would do in a similar case. *See Thorn v. International Business Machines, Inc.*, 101 *F.3d* 70, 74 (8th Cir.1996); *Diesel Serv. Co. v. AMBAC Int'l Corp.*, 961 *F.2d* 635, 639 n. 3 (7th Cir.1992). This court declines to follow dicta from the *Dayan* decision regarding the implied covenant of good faith's application to express contractual terms. Instead this court finds that if the issue before our court was presented to the Illinois Supreme Court as a matter of Illinois law, that court would hold the implied covenant of good faith could not be used to rewrite the express terms of a franchise contract. Such a decision would comport with Illinois precedent as well as the great weight of commentary and judicial opinion.[2] *See, e.g., Beraha*, 956 *F.2d* at 1443(discussing Illinois law); *Foster*, 52 *Ill. Dec.* at 308, 421 *N.E.2d* at 1380 (citing numerous Illinois decisions); Lee A. Rau, *Implied Obligations in Franchising: Beyond Terminations*, 47 Bus. Law. 1053, 1065 (1992)("[A]n obligation of good faith cannot be used to override express contract terms— a proposition that has been widely followed regardless of the source of the claimed good faith obligation."); Diamond & Foss, *supra*, at 586 (discussing implied good covenant generally).

Infomax and MBO each cite cases decided after the *Dayan* decision that make reference to or interpret *Dayan*. These cases are split on the question of whether *Dayan* stated that the implied covenant of good faith overrides express terms. *Flynn Beverage Inc. v. Joseph E. Seagram & Sons, Inc.*, 815

---

**2.** The best that can be said of the *Dayan* court's decision is that it might indicate the possible willingness of the Illinois Supreme Court to find certain express terms in franchise contracts to be unconscionable. *See* Burton, *supra*, at 371 n. 14 (noting importance of distinguishing between the implied covenant of good faith and unconscionability). Unconscionability, however, was not alleged in the complaint before us now. Furthermore, we doubt that even if alleged, such a claim

would be successful. *See Highway Equip. Co. v. Caterpillar, Inc.*, 908 *F.2d* 60, 65 (6th Cir.1990)(discussing unconscionability under Illinois law); *Jones Distrib. Co. v. White Consol. Indus., Inc.*, 943 *F.Supp.* 1445, 1461–63 (N.D.Iowa 1996)(discussing unconscionability in Illinois and elsewhere); *Cf Corenswet, Inc. v. Amana Refrigeration, Inc.*, 594 *F.2d* 129 (5th Cir.1979).

*F.Supp.* 1174, 1180 (C.D.Ill.1993)(allowing claim for breach of implied covenant, in case involving express terms, to survive motion to dismiss); *Jespersen v. Minnesota Min. & Manuf. Co.,* 288 *Ill.App.*3d 889, 224 *Ill.Dec.* 85, 89, 681 *N.E.*2d 67, 71 (1997)(stating that, under Illinois law regarding distributorship contracts, "the duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will"). Neither of these cases, however, discuss *Dayan* critically or with much detail. They are therefore unpersuasive to this court. It should nevertheless be noted that the Illinois state court decision implies *Dayan is* in agreement with the Illinois common-law tradition of holding that the implied covenant of good faith does not override express terms.

This court holds that count II (breach of good faith and fair dealing) of Infomax's complaint shall be dismissed for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).

### Violation of Illinois Franchise Disclosure Act

■ Infomax argues that MBO Binder violated the Illinois Franchise Disclosure Act (IFDA) by terminating the dealer agreement without cause. The dealer agreement provides:

3. *Term of Agreement.* The term of the distributorship granted by this Agreement begins today and ends on a date forty-five (45) days following written notice of termination, *with or without cause,* by either party to the other . . .

8. *Miscellaneous.*

. . . .

d). *This Agreement shall be governed and construed in accordance with Illinois law* and shall be deemed to have been entered into at MBO America's offices in Westmont, Illinois.

(Emphasis added.) The IFDA states:

Termination of a Franchise. (a) It shall be a violation of this Act for a franchisor to terminate a franchise of a franchised business located in this State prior to the

expiration of its term except for "good cause"

815 Ill. Comp. Stat. 705/19.

■ MBO argues that although the Illinois Franchise Disclosure Act is undoubtedly part of "Illinois law," it does not apply to this case because Infomax is not an Illinois franchisee. (MBO Brief at 4 (pointing out that the above code provision expressly states it applies only to "a franchised business located in this State").) For this proposition MBO cites two cases: *Highway Equipment Co. v. Caterpillar, Inc.,* 908 *F.*2d 60 (6th Cir.1990), and *In re Montgomery Ward Catalog Sales Litigation,* 680 *F.Supp.* 182 (E.D.Pa.1987). Both cases dealt with the Illinois Franchise Disclosure Act.

In *Montgomery Ward,* the federal district court held that the IFDA did not apply to a Pennsylvania franchise even though the parties agreed that "Illinois law" should govern their contract. *Montgomery Ward,* 680 *F.Supp.* at 187. The court felt it needed to stand in the shoes of the Illinois Supreme Court and asked the following question: "I must decide if the Supreme Court of Illinois would conclude that the General Assembly of Illinois intended the Franchise Act to have extraterritorial application." *Id.* at 186. The court found that the IFDA itself was silent as to any extraterritorial effect. *Id.* The court then looked to Illinois case law. There it found the following rule: "when a statute . . . is silent as to extraterritorial effect, there is a presumption that it has none." Not surprisingly, the court found that the Illinois court would not apply the IFDA extraterritorially.

The other case MBO cites, *Highway Equipment Co. v. Caterpillar Inc.,* 908 *F.*2d 60 (6th Cir.1990), agreed with a lower court's reliance on *Montgomery Ward* and affirmed the lower court's holding that the IFDA could not be applied extraterritorially—even if the parties agreed Illinois law governed. The court of appeals stated that "[t]he IFDA does not indicate any intention by the legislature to extend the statute to franchises located outside Illinois." *Highway Equipment,* 908 *F.*2d at 63.

Both cases cited by MBO labor heavily under a substantial misconception regarding choice-of-law clauses in commercial contracts. As stated in the Restatement (Second) of the Conflict of Laws:

> The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties. So much has never been doubted.

Restatement (Second) of Conflict of Laws § 187 cmt. c (1971)(discussing the law of the state chosen by the parties to a contract). *Highway Equipment and Montgomery Ward* treat the parties' contractual choice of law as a legislative act rather than a contractual incorporation of "extrinsic material." Both cases consider the intent of the chosen laws' state legislature dispositive—as if the parties' choice somehow affects the chosen state's interests. Choosing Illinois' laws as a short-hand means of incorporating numerous contractual terms does not affect any interest of the State of Illinois. The parties are not availing themselves of the Illinois court system. Any issues resolved by our court "under the law of Illinois" has, of course, no binding affect on Illinois courts, nor does it affect the interests of Illinois residents. Finally, enforcing the parties' choice of law does not in any way give "extraterritorial" effect to the laws of Illinois: the contract, not the law of Illinois, is enforced in Iowa. *See Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35 *F.*3d 813, 825–26 (3d Cir. 1994).

One recent commentary criticizes the approach in *Highway Equipment and Montgomery Ward* as "most certainly wrong" for the very reasons stated above:

> Since the underlying assumption . . . is that the parties should be generally free to choose the law that will govern them, it is anomalous to conclude that the chosen law will not apply simply because the legislature passing the chosen law only insisted upon its application within that state. In essence, section 187 [Restatement (Second) of Conflicts of Law] allows the parties . . . to place themselves within the ambit of [the chosen state's] law.

George F. Carpinello, *Testing the Limits of Choice of Law Clauses: Franchise Contracts as a Case Study*, 74 Marq. L.Rev. 57, 78–79 (1990). Infomax and MBO clearly and unequivocally intended to have the law of Illinois govern any contract disputes. The parties, therefore, clearly intended for courts applying this law to act as if the parties were within the ambit of Illinois law.[3] This court finds *Highway Equipment and Montgomery Ward* of highly questionable value and therefore unpersuasive.

There is, however, one distinct problem with applying the terms of the Illinois Franchise Act to the contract at issue. The terms of the IFDA directly contradict the clear and express "without cause" termination provision. Similarly to the implied covenant of good faith, choice-of-law clauses are used primarily as gap-fillers. *See* Restatement (Second) of Conflicts of Laws § 187 cmt. c. There is no "gap" regarding whether the parties intended to allow termination without cause. The general rule is that choice-of-law clauses should not be given effect to the extent their operation would invalidate the contract overall or an express provision thereof. *Id.* at cmt. d. Instead, the choice of law should be considered a mistake as to the invalidating portion of chosen state law. *See Bense v. Interstate Battery Sys. of Am., Inc.*, 683 *F.*2d 718, 722 (2d Cir.1982).

Although rejecting the notion that the Illinois Franchise Disclosure Act should not be considered to apply because Infomax is not an Illinois franchisee, this court nevertheless holds Infomax has failed to state a claim upon which relief can be granted under count III (violation of Illinois Franchise Disclosure

---

**3.** It should be noted that any other conclusion would seemingly require this court to apply the law of Illinois regarding personal jurisdiction as well. It is doubtful that the Supreme Court of Illinois would find it had personal jurisdiction in this case. Therefore, none of the laws—statutory or otherwise—would apply.

Act). Fed.R.Civ.P. 12(b)(6). The terms of section 705/19 of the Illinois Code do not apply to the agreement in this case. *See* 815 Ill. Comp. Stat. 705/19 ("Termination of a Franchise. (a) It shall be a violation of this Act for a franchisor to terminate a franchise of a franchised business located in this State prior to the expiration of its term except for 'good cause'. . . .").

### Conclusion

Counts II and III fail to state a claim upon which relief can be granted. Count I (breach of contract) was voluntarily dropped by the plaintiff. The court hereby dismisses counts I through III of plaintiff's complaint.